## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARIS MONTGOMERY | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  1:23-cv-03085 |
| | ) | |
| VILLAGE OF DOLTON, an Illinois | ) | Judge |
| municipal corporation | ) | |
| | ) | Magistrate Judge |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, ARIS MONTGOMERY, by and through her attorneys, Griffin

Williams McMahon & Walsh, LLP, and presents her Complaint at Law against the VILLAGE OF

DOLTON and in support thereof, complains as follows:

## PARTIES TO THE ACTION

1.      Plaintiff Aris Montgomery ("Ms. Montgomery") is, and at all times was, a resident of

the State of Illinois, County of Cook.

2.      Ms. Montgomery is, and at all times complained of was, an employee of the Village

of Dolton as defined and codified in 820 ILCS § 115/2.

3.      Defendant Village of Dolton ("the Village") is an Illinois municipality located in

Dolton, Illinois.

4.      The Village is, and at all times complained of was, Ms. Montgomery's employer

as defined and codified in 820 ILCS § 115/2.

5.    This is a civil action for damages to redress deprivations under the color of law of the rights, privileges, and immunities secured under the First Amendment to the United States Constitution and the Illinois Wage Payment and Collection Act ("IWPCA").

## JUSRISDICTION AND VENUE

6.    This Court has original jurisdiction in this matter pursuant to federal question jurisdiction, 28 U.S.C. § 1331, in that this is a civil action arising under the Constitution, laws or treaties of the United States.  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(1)(2) and (d), in that the corporate Defendant resides and may be found in this district and all the events alleged occurred within this district.

## STATEMENT OF FACTS

8.    The Village is a municipal corporation located within the southern suburbs of Chicago, Illinois, County of Cook.

9.    On November 21, 2021, Ms. Montgomery was hired by the Village as a deputy clerk with a starting salary of $35,000.00 annually.  As deputy clerk, Ms. Montgomery worked under the guidance and direction of the Village Clerk Alison Key ("Clerk Key").

10.    Ms. Montgomery's duties as deputy clerk consist of administrative work including preparation of meeting agendas and minutes, responding to Freedom of Information Act ("FOIA") requests, maintaining and managing Village records, meeting deadlines, receiving and distributing mail and attending board meetings.

11.    Shortly after Ms. Montgomery was hired, Village Mayor Tiffany Henyard ("Mayor Henyard") met with her to discuss the position. Mayor Henyard warned Ms.

Montgomery, "make sure you are picking the right side." Mayor Henyard intended the comment, and Ms. Montgomery took the comment, as a warning to be loyal to Mayor Henyard politically.

12. Party affiliation is not an appropriate requirement for the position of deputy clerk.

13. At the time Ms. Montgomery was hired and continuing through the present, the relationship between Mayor Henyard and the Village's Board of Trustees had devolved into bitter political warfare.

14. At a special meeting on December 8, 2021, the Village's Board of Trustees ("the Board") placed two referenda on the June 28, 2022, general primary ballot. One referendum asked whether the Village should enact a mechanism to recall the mayor and the other asked whether Mayor Henyard should be recalled and removed from office.

15. There was significant campaigning with respect to the referenda. Ms. Montgomery campaigned openly in support of the referenda at times when she was not working for the Village.

16. In December 2021, Ms. Montgomery attended a political meeting during her personal time in support of the Board called "Tea with the Trustees." The referenda were discussed at the meeting and Mayor Henyard was present.

17. In December 2021, Ms. Montgomery placed a sign in the front yard of her personal residence in the Village in support of the referenda. Also in December, she worked at a call center and contacted Village residents in association with the Board and in support of the referenda.

18. Mayor Henyard filed petitions in opposition to the referenda in December 2021, January 2022, and February 2022.

19. On or near February 21, 2022, after completion of a 90-day probationary period,

the Board voted to approve a raise for Ms. Montgomery to $55,000.00 annually, effective immediately.

20. Mayor Henyard ordered the finance department not to implement the raise due to Ms. Montgomery's political speech in favor of the referenda and association with the Board.

21. In February 2022, after the Board voted to approve Ms. Montgomery's salary increase, Mayor Henyard told Ms. Montgomery that she would receive a salary increase only if she agreed to accept a new position as "executive assistant." The executive assistant would report to Mayor Henyard rather than Clerk Key and would work under the mayor's authority.

22. Clerk Key asked Village Administrator Keith Freeman to explain why the Village wasn't paying Ms. Montgomery's full salary. Mr. Freeman responded, "it's the mayor, not me," told Clerk Key and Ms. Montgomery that they "should have stayed impartial," and that Ms. Montgomery was a "casualty of war."

23. Mayor Henyard threatened to have Mr. Freeman give Clerk Key a "write up" even though he had no authority to discipline an elected official.

24. In May 2022, the Board voted to approve an additional raise for Ms. Montgomery to $60,000.00 annually as part of the Village's appropriation ordinance. The Board notified Ms. Montgomery that she had received the raise.

25. June 28, 2022 was election day. Ms. Montgomery campaigned outside of a polling station on election day. Mayor Henyard at times stood and, at other times, drove around to various polling stations and witnessed Ms. Montgomery working outside the polling station in support of the referenda.

26. The residents of the Village voted in favor of enacting the referenda. On August 1, 2022, Mayor Henyard vetoed the appropriation ordinance. On September 6, 2022, the Board

voted to override Mayor Henyard's veto and the appropriation ordinance became law.

27.     Despite the appropriation ordinance, Mayor Henyard continued to direct the finance department to refuse to implement Ms. Montgomery's raise.  As such, Ms. Montgomery has not been paid according to the February or May 2022 raises.

28.     According to the Illinois Wage Payment and Collection Act ("the Act"), "Every employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month."  820 ILCS § 115/3.

29.     The Act further provides that "All wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned. All wages earned by any employee during a weekly pay period shall be paid not later than 7 days after the end of the weekly pay period in which the wages were earned.  820 ILCS § 115/4.

30.     The Village never paid Ms. Montgomery according to her wage increases of February 2022 or May 2022 at any time between February 2022 and the present in retaliation for engaging in protected political speech and association.

31.     Mayor Henyard terminated the employment of numerous other Village employees who engaged, or were perceived to have engaged, in similar protected speech and association in favor of her political adversaries including, but not limited to, Matthew Stacey, Parris Dawson, Elizabeth Scott, Kashika Manning, Karen Johnson, and Lavelle Redmond.

32.     As a result of the Village retaliating against Ms. Montgomery for engaging in protected speech and association in favor of Mayor Henyard's political adversaries and the

Village's resultant willful violation of the Act, Ms. Montgomery has suffered lost wages of over $25,000.00 and lost pension benefits.

## COUNT I

## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO FREE SPEECH VIA 42 U.S.C. § 1983

33. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through thirty-two as it fully set forth herein.

34. The Village declined to implement Ms. Montgomery's raises in retaliation for exercising protected political speech in support of the referenda and the Board.

35. Ms. Montgomery's exercise of protected political speech in support of the referenda and the Board are activities protected by the First Amendment.

36. The Village is responsible for the deprivation of Ms. Montgomery's First Amendment rights.

37. The Village was acting under the color of law when depriving Ms. Montgomery of her First Amendment rights.

38. As a result of the aforementioned deprivation of federal rights, Ms. Montgomery suffered and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff ARIS MONTGOMERY demands judgment be entered in her favor and against Defendant VILLAGE OF DOLTON for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT II

## RETALIATION IN VIOLATION OF THE FIRST AMENDMENT'S RIGHT TO ASSOCIATE VIA 42 U.S.C. § 1983

39. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

40. The Village declined to pay Ms. Montgomery her full wages in retaliation for exercising her right to political association with the Board and their support of the referenda.

41. Ms. Montgomery's political association with the Board and support for the referenda and the Board, are activities protected by the First Amendment.

42. The Village was responsible for the deprivation of Ms. Montgomery's First Amendment rights.

43. The Village was acting under color of law when depriving Ms. Montgomery of her First Amendment rights.

44. As a result of the aforementioned deprivation of federal rights, Ms. Montgomery suffered, and will likely continue to suffer, grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and emotional distress.

WHEREFORE, Plaintiff ARIS MONTGOMERY demands judgment be entered in her favor and against Defendant VILLAGE OF DOLTON for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT III

## MONELL CLAIM VIA 42 U.S.C. § 1983

45. Plaintiff repeats, re-alleges, and incorporates by reference the factual allegations of

7

paragraphs one through thirty-two as if fully set forth herein.

46.     Mayor Henyard was the final policymaker at the Village of Dolton with respect to withholding wages from non-union Village employees at all times relevant hereto.

47.     Each act of Mayor Henyard described above constituted a policy of the Village of Dolton to retaliate against those that engage in political speech or association in favor of the referenda and/or the Board.

48.     As a result of employing a custom, policy or practice espoused by the Village to retaliate against those who engage in protected political speech in favor of the referenda and/or the Board or associated politically with the Board, Ms. Montgomery suffered the aforementioned deprivation of federal rights and will likely continue to suffer grievous harm including, without limitation, loss of income, loss of pension benefits, loss of earnings potential, loss of opportunities, loss of enjoyment of life, and severe emotional distress.

WHEREFORE, Plaintiff ARIS MONTGOMERY demands judgment be entered in her favor and against Defendant VILLAGE OF DOLTON for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## COUNT IV

## VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT

49.     Plaintiff repeats, re-alleges and incorporates by reference the factual allegations of paragraphs one through thirty-two as if fully set forth herein.

50.     According to the IWPCA, "'wages' shall be defined as any compensation owed an employee by an employer pursuant to an employment contract or agreement between the 2 parties, whether the amount is determined on a time, task, piece, or any other basis of calculation."

51.     The Village has unlawfully refused to pay wages owed to Ms. Montgomery pursuant to an agreement between them as defined in the IWPCA.

52.     Section 115/3 of the IWPCA provides "[e]very employer shall be required, at least semi-monthly, to pay every employee all wages earned during the semi-monthly pay period. Wages of executive, administrative and professional employees, as defined in the Federal Fair Labor Standards Act of 1939, may be paid once a month."

53.     Section 115/4 of the IWPCA provides "[a]ll wages earned by any employee during a semi-monthly or bi-weekly pay period shall be paid to such employee not later than 13 days after the end of the pay period in which such wages were earned.

54.     The Village knowingly, intentionally and wrongfully refused to pay wages owed to Ms. Montgomery.  As a result of the Village's willful refusal to pay wages, Ms. Montgomery has suffered lost wages in excess of $25,000.00 and is owed statutory interest in excess of $10,000.00.

WHEREFORE, Plaintiff ARIS MONTGOMERY demands judgment be entered in her favor and against the Village of Dolton for compensatory damages in an amount to be determined at trial, statutory interest, emotional distress, attorney fees, costs of suit, and any other relief the Court deems appropriate.

## **JURY DEMAND**

55.     Ms. Montgomery demands trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted,

GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP

By: */s/ Patrick J. Walsh*_____
        Patrick J. Walsh, Esq.

9

Patrick J. Walsh, Esq.
GRIFFIN WILLIAMS
MCMAHON & WALSH, LLP
21 North Fourth Street
Geneva, Illinois 60134
(630) 457-4242
ARDC. No. 6287629
pwalsh@gwmwlaw.com